FEDERAL GRAIN CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30902. Promulgated November 18, 1929.

*Charles B. McInnis, Esq.*, for the petitioner.
*J. E. Marshall, Esq.*, for the respondent.

246

OPINION.

MORRIS: The petitioner contends that the individuals who acquired the assets of the National Grain Corporation and in turn transferred them to it, and received in exchange therefor an enquitable interest

in its capital stock subject to a voting trust for a period of five years and a contract to sell, were not in control of the petitioner immediately after the said exchange within the meaning of section 203 (b) (4) of the Revenue Act of 1924.

Section 204 of the Revenue Act of 1924 provides, in so far as applicable here:

(a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\*  \*  \*  \*  \*  \*  \*

(8) If the property (other than stock or securities in a corporation a party to a reorganization) was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in paragraph (4) of subdivision (b) of section 203 (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money in addition to such stock or securities), then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

Paragraph 4 of subdivision (b) of section 203, referred to in the section of the Act aforesaid, provides:

No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

The petitioner contends further that, since the individuals were not in control within the meaning of section 203, *supra*, the basis for determining gain or loss upon the realization of accounts receivable is the cost thereof to the petitioner and since its capital stock was equivalent to the value of accounts receivable and other assets received in exchange therefor, no gain or loss was realized from the said accounts receivable during the fiscal year ended April 30, 1925.

It may be true that the assets when transferred to the petitioner had a fair market value in excess of the par value of the stock paid therefor and it would follow, of course, that the stock had an equal value, irrespective of the par value, but there is no showing in the record just what the value of the property paid in by the transferors at the time transferred was, nor of any enhancement in value while the property was in the hands of the transferors. So that, in so far as the record discloses, the cost to the petitioner is the same as the cost to the transferors, and, therefore, the two bases are the same in amount; consequently, the adoption of either would reach the same mathematical conclusion.

The petitioner has requested us to find as a fact that the value of the capital stock issued in exchange for the accounts receivable was not less than the amount realized therefrom during the twelve months following the exchange, but there is absolutely nothing in the record upon which to predicate such a finding. The value element at the date of the exchange of assets for capital stock of the petitioner was vital and for failure to offer proof thereof the respondent's determination must be sustained.

While the foregoing satisfactorily disposes of the issue under the pleadings, it is proper, we believe, since the issue was presented and argued almost entirely upon the question of control of the petitioner by the transferors, that we express our views with respect thereto. Section 203 (i) of the Revenue Act of 1924 defines the word "control" to mean "the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation." In other words, the term "control" relates to "ownership" and has no bearing upon the actual control over the corporate affairs which a stockholder exercises through his vote; therefore, the fact that the agreement of April 25, 1924, vested the voting rights in the trustee is of little or no importance.

The mere fact that the certificates of stock were never actually reduced to possession by the individual transferors of the assets begs the question of ownership. It is not essential that stock certificates be issued at all in order to make one a stockholder. In our opinion, there is no question that the transferors had ownership and control of the petitioner's capital stock for some period of time, even if only momentary, which the petitioner concedes would be sufficient to meet the provisions of the statute. The creation of the trusteeship transferred to Klein the legal title to the shares of stock and the transferors retained their equitable interests. Without already having had complete ownership, therefore, at some time no interest whatsoever could have been transferred to Klein by the transferors. They did have complete legal and equitable ownership within the meaning of the statute, although it may have been for only a short time. But the petitioner contends that the control must be genuine and substantial, and with this we agree. The petitioner further contends that a right bartered away prior to the agreement of the parties is not a genuine and substantial ownership. With this we do not agree. The so-called trusteeship amounted to nothing more nor less than placing the stock in the possession of Klein with the right to vote and by collateral agreement to purchase it within a period of five years. During the life of the so-called trusteeship the stock remained in the names of the transferors and the dividends accruing thereon were to be collected by Klein and paid over to the certifi-

cate holders. In other words, they enjoyed all of the fruits of ownership except possibly the right to possession of the certificate and the right to vote for a period of five years. That, in our opinion did not affect the "control" of the stock within the meaning of the statute.

*Judgment will be entered for the respondent.*